May it please the Court, my name is Ben Cooper and I represent the defendant, Appellant Grelyn of Maui. As the Court knows, this case is a slip and fall in a McDonald's on the island of Maui. The fundamental problem with the verdict is that the plaintiff rolled the dice and used the instructions to try to shoehorn the entire case into a narrow mode of operation theory that does not fit either one or both of the theories of how Mrs. Munguia came to fall. That is, the mysterious substance and the polymerized film on the floor. The jury was not instructed as to the requirement of actual constructed notice as to either of those two theories. You know, the Gump case seems awfully close to this one. I'm sorry, which case? The Gump case seems awfully close to this one. It doesn't for a couple of reasons, Your Honor. First of all, in Gump, the Court said, well, that the specific instrumentality of harm, which was known to be the French fry, was directly related to a specific mode of operation, which was allowing people to go peripatetic with their food in the McDonald's. But at that point, you knew exactly what the specific instrumentality was. Here, there are two theories of what the instrumentality was. The first was the polymerized layer of film on the floor. The problem with that is that their own ex- First of all, Mrs. Munguia testified the floor wasn't slippery when she walked on it. And second, their own expert says the floor, by his measurements, was not sufficiently slippery to have caused the fall, which required him to posit some mysterious substance that no one saw, no one felt, no one smelled, no one touched, that caused the fall. And Dr. Gail said, well, that would be a complete speculation what that was. Right, but the jury rejected all that. I mean, the jury – that was the thrust of the closing argument that your client's counsel made, is that there's no proof, no one saw it, didn't happen, we question it. And the jury said, no, we believe something happened. She slipped on something. Well, the problem is we don't know what the jury believed or didn't believe. And when you have two different theories, one, that the floor was already greasy, and second, there's this mysterious substance, then under this Circuit's precedent, you have to have the evidence to support both theories. But you could not instruct as to the mysterious substance under the mode of operation theory because if you don't know what it is, you can't connect it to a mode of operation. Do you have a case that says that precisely? I'm not talking about language that says – that connects the two, that says if you don't know what the substance is, mode of operation doesn't apply. Well, if you look at the series of cases, that's the clear holdings. Well, first of all, Ingersoll – There's no Hawaii case. There's no Hawaii case that says that. There's only one Hawaii case that applies, and that's Gump, and we knew it was a French fry. So there's no guidance. Right. But if you look at Ingersoll from Washington, there was a smear in the mall, but no one knew what the smear was. Why is Washington law relevant here? I'm sorry? Why is Washington law relevant? The problem is that the Hawaii law doesn't address it because there's a known instrumentality. But Hawaii, in developing the mode of operation rule, was looking what other states had done with that rule. But they only cited Kansas. Right. They only cited Kansas, and Kansas cited Arizona. So it seems to me those are the three jurisdictions that matter. And Washington is to draw from completely other jurisdictions. Right. And if you look at the Kansas case and you look at the Arizona case and you look at all these cases, you knew exactly what person slipped on and there was a way of connecting it to a specific mode. For example, in the Kansas case that's cited, they cite another case that says it was a proprietor's failure to inspect, maintain, or police his premises that could form the basis of a mode of operandi, which is kind of the theory, one of the theories of this case. But that's not the theory adopted in Gump in Hawaii, where the Court talked, if you look at the Gump case, it says you have to show that the specific instrumentality of harm was connected to a mode of operation. This says we agree with the court of appeal. And the court of appeal may cite it, and it says citing Jackson, I think is the case in Kansas. Right. And then Jackson has all this expansive language in it. But that's not what the Court cited in Jackson. And you have to look at the facts of Jackson. In Jackson, the plaintiff slipped on a spilled avocado juice, which was precisely the product sold in the Kmart cafeteria, although that seems a rather odd thing to sell in a cafeteria. But they took the risk that, you know, that someone was going to – and they allowed people to walk around. So if someone slipped on a product that was sold in the cafeteria. I understand your fact-based distinction, but I'm searching for a case, and preferably out of Kansas, Arizona, or Hawaii, that says if you don't know – you have to know what the substance is for the rule to apply. It doesn't come up because in not one single case in those jurisdictions was the substance not known. That is, the implicit holding is you know what the specific instrumentality is, and you link it to the mode of operation. What they're saying is that somehow if it's a fast food restaurant and someone slips on something, fine, you get a mode of operation instruction. There is no case that says that. Now, are you – And I think that's contrary. Are you saying that there was nothing on the floor that she slipped on, or are you merely saying we don't know what it was that she slipped on? Well, it's speculative whether there was something on the floor that she slipped on. Her expert says there had to have been something that she slipped on because the floor was not slippery enough by itself. And there was testimony. Well, his testimony was it would be complete speculation. Their testimony was we saw a brown spot. But their testimony was also she didn't slip on the brown spot. Mrs. Munguia specifically testified, I did not slip on that spot. There's no testimony that they slipped on similar spots. There's no testimony – to be quite blunt, the brown spot is a red herring. It could have just as well have been on a bench or on a table because there was no evidence that had anything to do with her fall. Yeah, but maybe this is an unanswerable question, but what I'm after is are you contending that she didn't slip on anything, that she just fell because she tripped? No, I'm not contending she – she clearly slipped and fell. I will – And so she slipped on something. That's why the jury – she slipped on something. But it matters what – I'm – that's okay. So she slipped on something. And you're saying because we don't know what it was that she slipped on, this language that the Hawaii court in Gump quotes from Jackson – and I'm just now reading from Jackson, but the part that's quoted by Gump – where a plaintiff's able to demonstrate that the business proprietor adopted a marketing method or motor operation in which a dangerous condition is reasonably foreseeable and the proprietor fails to take reasonable action to remove the dangerous condition, that doesn't really say much about how specifically, you know, we have to know whether it's a French fry or ketchup or anything else. But I think you have to look at page – I think it's page 432 where the Court is citing Jackson and states that the proposition is – I'm in Gump. It's right near the end of the page. No, I'm in Gump. You're not quoting – I'm quoting from Gump. Right. I think he was quoting from Jackson. Right. But I think if you're looking at what the Hawaii court thought the rule was, it stated the business will be held liable only if the – Now, are you reading from Gump? I'm reading from Gump. Where in Gump? It's at the end of page 432, the last full paragraph on that page. And that's Gump 1? That's Gump 1. Okay. I was reading from Gump 2, I guess, so let me think here. Gump 432? At the end of page 432. Hang on a second. That's of the Hawaii site at the end of page – I'm sorry, 431. I apologize. It's right before me. Okay. I'm on 431, so where do I – It's the last full paragraph on the page that begins the rules applicability is limited. And it says the business will be held liable only if the dangerous instrumentality is a reasonably foreseeable consequence of its mode of operation. You need to know what is the dangerous instrumentality and how is it – How about the dangerous instrumentality is a slippery floor? Right. But the floor – it can't be because the testimony – Why can't it be? Because of the testimony in the case. The testimony in the case for Mrs. Mungia was that the floor wasn't slippery. Oh, I guess maybe in this semantics then. Why can't it be? There was something on the floor that was slippery. There was something on the floor that was slippery. The problem is that we have to then say, was that slippery substance, quote, a reasonably foreseeable consequence of the mode of operation. And if it did not come from the – It's a public – I mean, the question is how specific do you have to make it. If you live in a place where there's snow and customers track in snow, if you live – and Hawaii has a big rainstorm and they track in water, is that – would that be covered in your view? No, it wouldn't, because the Supreme Court then takes the case and says, we emphasize just how limited this rule is. And we say that it had – it's limited to the circumstance where they basically let the people walk around with their food and the person slipped on a French fry as a result of that. The Court was not saying that any time someone slips in the – in a place where you allow people to carry food, that you're liable regardless of what you slipped on. There was not a case that says that. Let me read to you basically the same part of Gump that you read to us. So the first paragraph that you cite, rules of applicability are limited, and then the sentence that you rely on in the second paragraph explaining what they've just said, well, that it's limited. In other words, where a plaintiff is able to demonstrate that the business proprietor adopted a marketing mode or mode of operation in which a dangerous condition is reasonably foreseeable and fails to take reasonable action to discover and remove, may recover without showing actual notice or constructive knowledge of the specific accident. Well, without showing knowledge of the specific instrumentality begins to tell me you don't need to know it's a French fry. All you need to know is that it was a slippery floor. No, Your Honor, because what the – what both the Court, Gump I and in Gump II, say is you did not need to have notice of that particular French fry, but you still needed to be able to connect what the slippery substance was to what they were doing. If this were an auto – I just have trouble with this case at the level of particularity that you're insisting on, that is to say anybody operating a restaurant knows that things get onto the floor. Anybody operating a restaurant knows that floors that are slippery are dangerous, and therefore your mode of operation is going to be you're going to do something to make sure that the floor is not slippery. Yes. But for – but the Gump II forecloses that when the Court emphasizes just how limited the rule is. And they tried to foreclose that. Is there language other than what we've just read that tells me how limited it is? I'm sorry. I have the wrong case in mind. I believe there is wrong, because it's where the Court is emphasizing just how limited the rule is. And I don't have it to quote. But I think you can't – Well, we just read two paragraphs where it tells us how limited it is. Right. But you're saying that there's other language between them. I think there is when they're limiting – when they're saying just how limited it is. Maybe you can find it in the textbook. Yeah, I will. But the key thing is, though, I think it's a mistake to look only at Hawaii and the couple of cases that they cited at the time, 10 years ago, and to ignore the fact that Hawaii was trying to evolve its rule consistent with the case law in other States. It doesn't say that, though. I'm sorry? It doesn't say that. The problem I have is that, you know, I live in a State that is wildly pro-plaintiff, and across the border in Idaho, they're wildly pro-defendant. The common law couldn't be more different between the two States. So it tells me nothing as to what Washington or other States do unless they relied on what was going on. And they cite Kansas, and Kansas cites Arizona. Right. But there is not a single case that's been cited from Kansas or from Arizona that has followed this theory, that somehow it doesn't matter what made the floor slippery. Nor to the contrary. Nor to the contrary. But if you look at the reasoning of those cases, the fact is that they're saying that the courts made a point in both cases of saying that, in fact, connecting it to a product sold by that particular store. Well, Kansas, as I mentioned earlier, talks about the risks inherent basically of not cleaning properly, which is part of this. But not cleaning properly is not a mode of operation. And we know that from Hawaii, because Hawaii came back in the Moyle case, the Hawaii Supreme Court, and said, well, not everything you do is a mode of operation. Right. That's what I'm saying. Right. And so. I mean, I'm just saying the utility of going to the other jurisdictions when you don't even have a single case that says you need to prove that it's the French fry. It's just somewhat limited. And I think that's a reasonable consequence, frankly, when the Court says, if the dangerous instrumentality is a reasonably foreseeable consequence. And the notion that – and I'll go and I'll pull the language from Gump, too, where the Court emphasizes that – and the reason it publishes its opinion is to emphasize that this is a narrow consequence of where they let them carry the food around and someone slipped on the food that was dropped, as opposed to anything else. What this does is say – take the mode of operation rule to a new level that no court, cited court, has embraced, which is to say that if you run a fast food restaurant or a cafeteria or a salad bar or any kind of restaurant where people could be carrying food, if you slip on anything in there, it's subject to the mode of operation rule. Yet there's not a single case that's been cited from anywhere in the country which has taken it to that point. But I'm not sure the plaintiff's theory goes that far. Well, I think it does. I think it does, Your Honor, because the only evidence that the district court could point to of that the mysterious, slippery substance came from the restaurant was the brown spot, which no one slipped on. So, in fact, you have to say that somehow that this creates a responsibility for – that somehow you're taken out of general premises liability, not only as to what you sell, but to anything that the customer may bring in. No, but that's a fact-based difference you're making on – distinction you're making on this case. The district court did not say – did not give a strict liability instruction. No. I was not suggesting that, because it's too easy to fall into that, because it's still a negligence requirement. I'm talking about the requirement of notice, that somehow this takes out the notice requirement for an entire kind of business, regardless of what actually causes the slip. And neither the Hawaii courts have said that, nor Kansas, nor Arizona, nor anyone else in the country. Of course, but the court does say is it doesn't really take out the notice requirement. It changes the focus, and there's still a series of hoops the plaintiff has to jump through in order to even sustain liability under this. And that in some ways, all these things are collapsing on themselves. They almost admit, don't they, Incomp? Well, I don't think it does, because if you posit a situation where the substance did not come from – was not the result of a motor operation, someone tracked in, for example, automobile grease from the parking lot, there is not a case that would say that that's dealt with under a mode of operation theory, because it doesn't relate, that substance of which the person slipped wasn't relevant. Even if it's a – even if it's a fast food restaurant or some other kind of establishment that might have a risk from something else. That is, you have to connect it. Or you try your case under general premises liability. This was not a case where the plaintiff was out of luck. They simply had to rely on the general law of premises liability, which requires you to prove actual or constructive notice. And plaintiff apparently thinks that they could do that, but yet the instruction to the jury did not require them to be put on notice. The notion – You're over your time. Thank you, Your Honor. Good morning. May it please the Court. My name is Michael Cruz. I represent the appellees and the plaintiffs below, Beverly Mangia and Reuben Mangia. As the district court recited in its 75-page post-trial order, in which it recited over 20 pages of direct trial testimony, Hawaii law is clear, and that is a quote, that the self-service method in this particular restaurant, not fast food restaurants generally, in this restaurant, is a mode of operation under the rule, and appellant's argument to the contrary is manifestly contrary to Hawaii law. So is it your argument that the mode of operation is just that it's a fast food restaurant where people drop things on the floor? No, it seems to be applied to all manners of businesses. The mode of operation rule is a manifestation of the age-old rule that a proprietor has an obligation to run its business in a way that's going to be reasonably safe to its customers. Right. If you have a business that foresees a particular harm, in this case, slippery floors, there's no dispute in this case. The defendants admit that it expects throughout the day its customers are going to be creating slippery conditions from dropping all sorts of its products all throughout the dining room. That is where notice arises. Well, so under your theory, the fact that someone could track in some grease would be actionable because the duty is to clean up. No. The proprietor in that case always has the opportunity to argue and where almost every case that where the mode of operation has been rejected has been a case where the defendant has been able to show that the type of instrumentality involved is not the kind that they expect. In this case, there's direct testimony from the defendants that they expect greasy floors. The corporate representative and the general manager of these stores testified that one of their particular problems is that people will drop greasy food on the floor, responsible customers will try and, you know, pick it up, throw it away, and that will leave grease residue on the floor. Sometimes that's not visible. So how does that intellectually distinguishable from the snow getting dragged in in a place like Montana where it's foreseeable that customers are going to bring in snow? It seems to me you're getting close to the exception of swallowing the rule. Well, and that is why the gum court calls that the owner's burden. I believe the Arizona court calls it the illogical exaction of an unanswerable question. Notice is the means by which we get to the ultimate question in all negligence cases of whether the defendant exercised due care. Well, in order to defend itself, which McDonald's apparently was not able to do under this instruction, but under this instruction in order to defend itself, McDonald's could have said, yes, it was slippery, it was something on the floor, it was something put by one of our customers, we don't know what it was, or it could even have said, yeah, it was a French fry, we don't know what it was, but we can successfully defend because look what we do. We have people go through there every 10 minutes, and by the time you're done, you say, I don't know what else McDonald's could have done, and then plaintiff loses. That's absolutely correct. In this case, we have a situation where, and it will always be fact-specific, it will always be case-specific. What is the hazard that is expected? In this case, the hazard is expected from a slippery floor. That could happen from any number of its products. That's recognized. We have a situation where we have notice. We're going to have a slippery floor. We have an obligation to exercise due care to address that slippery floor. We have a woman who slipped on a slippery floor. That is the defendant's defense. So, again, I'm puzzled, though. Let's say it turns out to be a grease brought in by another customer on the boots that has nothing to do with the mode of operation. Under your theory, they have a duty to clean up, which is different, I think. Well, we always have the obligation through circumstantial and direct evidence to show by preponderance of the evidence that the condition is of the nature that is expected by the mode of operation. But if you don't know what it was here, how can you – how do you get the instruction? What if it's hair gel out of some lady's purse and it's leaking out of her purse? It could be any other substance. You know, uranium, who knows? I mean, people bring in all kind of stuff. Doesn't this almost make it a strict liability for slip and fall for the so-called self-service big box fast food place? It certainly doesn't for the reason Your Honor raised. All of the elements go together. And if a defendant comes to a case and says, look, here are our travel path logs, here's the credible testimony of our workers that were there that morning checking the floor diligently, we know, we're very confident that this could not have happened, this had to have been something else, because we had notice, we exercised the duty. But that's not an answer to Judge McHugh's question. It's not an answer to this. I'm looking at the jury instruction. So the district court's sitting there, should I give or not give this jury instruction? I'm hard-pressed here in the argument to figure out when you wouldn't give it. It seems you're saying, no, no, that there's sometimes that you wouldn't have this, you know, marketing method or mode of operation. But in a case like McDonald's, it seems to me they have floors, they have customers, they sell food that could make you slip. But even if it's somebody else's substance, you get this instruction. Would that be true? No. That would not be right. If the defendant can show that what is on the floor is not a product of their mode of operation, the instruction doesn't come about. But why is the burden on the company to show that it wasn't from their mode of operation when nobody knows what it was? The burden is on the plaintiff to show that the condition that was encountered in the injury was of the type expected by the mode of operation.  And that's the reason why the plaintiff was not able to show that it was a product of their mode of operation. Can you just maybe fill me in on the facts a little more on that point? The red herring brown spot wasn't the cause of the problem here. Am I correct that nobody knows and nobody knows why she slipped or what she slipped on? The substance forensically has not been identified. That's correct. I don't think the spot is a red herring. And has it been identified that the spot where she slipped had the non-forensically identified substance? Pardon? That the spot where she slipped actually had on it this non-identified substance? The spot I don't believe is a red herring. The spot is evidence that there was a spill on the floor that hadn't been cleaned up. And the questions that you're posing are exactly the reason that this rule exists. If the defendant can show that this condition is not related, not expected from their mode of operation, we don't get the mode of operation instruction. I gather your theory is this, and correct me if I'm wrong, but I just want to make sure we're all on the same page, is that food drops on the floor and even if you don't slip on the food, and this polymer substance, that's what your expert said, is probably what she slipped on. Is that it? No. It was the polymer substance combined with something else spilled on the floor that the jury was allowed to decide, do we think it's related to the spot, is it something else, is it one of these greasy things that were dropped or picked up? The spot on the floor is no red herring. It is direct evidence that something was spilled on the floor that wasn't cleaned up. Maybe it was partially cleaned up, maybe there was something next to it. And your Honor's questions are exactly why this rule exists. Go on forever. And part of it, if you may, Archie, just for a second, is that your theory is that from the McDonald's manual they anticipate this sort of stuff and they say that's why you've got to clean it up. And that's your theory of mode of operation, that it's not always food, it's food plus the grease, got to clean it up, they anticipate it, it happened. And your defense is they didn't clean it up often enough or maybe at all. Your defense is I didn't. I'm sorry. Your defense to their method of operation saying you have to clean it up, we take reasonable care in cleaning it up, is that they didn't clean it up. That's right. And this is exactly why the rule exists. Even if we did forensically identify what this was, there would be nothing stopping a defendant in that case from saying, as the defendant in Jackson was foreclosed from doing, saying, well, this isn't our grease. This is maybe from somewhere else. Let me go at it this way. My understanding of the evidence that you put in is that McDonald's, as a corporation, recognizes the dangers in slippery floors and has very precise instructions to its operators as to what they're supposed to do. In the mode of operation, however, this particular operator was that they didn't comply with the McDonald directive. The McDonald directive is directed specifically to this sort of dangerous condition that McDonald's anticipated in the stores. That's absolutely correct. And that's why the rule exists, because we have a question which will exist throughout. And there are cases cited from other jurisdictions where they're allowed to go to the jury where they can identify it. That's why they look at things like the mode of operation, maintenance, what did you do, because that is something that the defendants and the plaintiffs can actually address. The plaintiffs can come in and show evidence that they didn't comply. They can come in and show evidence that they did comply. And those are facts that people can address. And that's the ultimate question. Did the defendant exercise reasonable care? Is there a grounds for the jury to find on a preponderance of the evidence they did not exercise reasonable care? And as a result, we have the exact kind of condition that they expected. And in this case, in particular, not only do we have the law that requires that, but we have a specific mode of operation that says in this particular store, we're going to have slipping hazards that you're never going to be able to identify. We're going to have some grease remnants on the floor that we know, as the proprietor, we need to be out there taking care of. But the customer can't see it. So we cannot, with any sense of justice, hold up a requirement as a threshold matter to say, well, you have to tell us what it is. When we know in advance, you'll never be able to tell us what it is. I guess at a certain point. But, I mean, you're getting awfully close to strict liability, saying that we know there are grease remnants and, therefore, if we don't comply strictly with our policy, you get the mode of operation structure. It's never strict liability, because the defendant can always say, we know we have slippery floors. Maybe it was slippery, but we did everything reasonably possible to keep it clean, and here is our proof of that. In this case, notably, there's not a sentence written by the appellant that addresses that core issue, because the evidence is overwhelming that it did not exercise due care to address the known hazard of slippery floors. So why, I mean, we have to deal with what's on the table, but it sounds to me that there's some force to the argument that you could have and perhaps should have just litigated on a straight premises liability theory, that they had constructive notice, it's evidenced by their manuals and so forth, and didn't comply with it. Do you think you lose? No. The general, the traditional rule of liability is something that may apply in this case. If a property owner was going to be asked, you know, anytime that a property owner is going to be asked to exercise reasonable care, they have to have notice, constructive or actual, that there's something to be concerned about. Right. You don't have someone doing travel pass through the courtroom and another person constantly monitoring for spills. In order to be held liable in that context, you have to show, otherwise, through notice of the direct instrumentality, some notice that you have to exercise reasonable care. In the mode of operation context, they know when they open their doors what they're going to have. That is where the obligation to exercise due care arises, and that is the focus of the inquiry. In his basic operation, this does not seem to be all that, the mode of operation instruction doesn't seem to be all that different from a premises liability instruction. If you say premises liability instruction says, if you have a premises that is likely to be dangerous for X reason, you have to take reasonable precautions to avert the danger. That's correct. It's a variation, it seems to me, on premises liability, but it's kind of a specific one that requires mode of operation instruction. Well, Gump specifically said this is nothing new. This is traditional liability law. We can look at, for example, the Ingersoll case that counsel just raised is a good example. The problem with Ingersoll is that the mall had no mode of operation, and they could identify, hey, it looks like it's ice cream. The plaintiff failed because she could not identify any why any condition similar to that would be expected. Fisher, which isn't, I think it's from Connecticut or something like that, but the appellant says that's the state of the law. Why, I don't know. But let's assume that for a second. Fisher says similar. We expect these kind of conditions. The plaintiff fell on similar conditions. Let's focus our inquiry on what the real question is in all negligence cases everywhere, including Hawaii, did they exercise due care to prevent these conditions from happening? That is why it is never strict liability, because it can be slippery and they still have a defense. Roberts. Okay. Any further questions? Thank you, counsel. Thank you. We'll give you two minutes. Thank you, Your Honor. The Court had asked where the limiting language comes from, and I would point the Court's attention to gum to the Hawaii Supreme Court's decision at page 411. That's in the 93 Hawaii at page 411. Okay.  The court says that there is no such thing as a drop McDonald's food. The discussion begins after the quotation from the Corbett case and the two paragraphs that follow. What the Court says is it talks about that Walmart had constructive notice that falling McDonald's food could create a potential safety hazard. And then the Court goes in the next paragraph to say, although we agree with the adoption of the mode of operation rule. Okay. I'm on the page, but okay. So, okay. Although we agree. The first note was about the drop McDonald's food. That's in the paragraph right beyond the block quote from Corbett. Okay. So I've got the first column, bottom of the column on 411, although we agree. Okay. I'm with you. Okay. I've got a Westlaw version. On the second page, on the second column it begins, although we agree with the adoption of the mode of operation rule, we clarify the ICA's opinion by holding that the application of the rule is limited to circumstances such as those of this case. Walmart chooses as a marketing strategy to leave store space to McDonald's in order to attract more customers and encourage them to remain in the store longer. Walmart also chooses for the most part not to prevent patrons from carrying their McDonald's food into the Walmart shopping area. This mode of operation gave rise to the hazard that caused Gomp's injury. Under the motion, mode of operation rule, Gomp was not required to prove that Walmart had actual notice of the specific instrumentality that caused her injury. That is, it was the concern was you took the risk that people would drop food. She tripped, she slipped on, or I guess he slipped on, dropped food, and therefore you didn't have to show that McDonald's knew about that french fry, because that was within the zone of the mode of operation. But it absolutely, in response to Judge Fletcher's question, X reason, it's important what X is. The X reason was dropped food in this case. So that means you need to know. Right. But their theory is there is some brown thing that looked like dropped food or something spilled, plus the grease, and that fell within the known risk. Well, there are two methods. What's wrong with that theory as we look back through the lens of the jury that validated it? Well, the problem is we don't, because it's a general verdict, we don't know what the jury found. Right. But we credit it. Well, but we have to ask whether both halves of their theory support whether the instructions made sense in both halves of the theory. The floor wasn't, we know from the expert and from Ms. McGeer, wasn't, they say it's a greasy floor. It was 0.43 coefficient of friction, slightly below 0.5, and that was testing it wet, even though there was no evidence that it was wet. So the floor was not, even by their own expert's account, slippery enough to cause a fall. So that's why he causes it. But if the jury had believed that, they could not have reached the verdict it did. I'm sorry? I mean, if they, the whole argument that your counsel made was, look, they didn't slip from anything that we did, and it was flatly rejected by the jury. The jury could well have believed that she slipped on something, some slippery substance that was on the floor by itself, because there was no testimony from their expert that you needed both. She could have believed there was a dangerous condition from that slippery substance on the floor that caused the violent slip, and that's what caused it. And looking at the instruction that was given, all they had to find was, didn't have to find that McDonald's had any notice of that slippery substance. So they took a slippery substance theory, which could only be done under general premises liability, and their, the floor wasn't properly cleaned, which they tried to make into more of a mode of operation, put them together and only got a mode of operation instruction. Well, why isn't part of the cleaning process part of mode of operation? Because we know from the Moyle case that the mode of operation has to be something that entices people. It's the marking that brings it. But it's not limited to that. And I read the Moyle case. Right. But I think it is. I think Moyle. I just don't read the cases the way you do. It seems to me the mode of operation of McDonald's, and I'll say choose McDonald's, that's where we are, is they serve food. Food can get dropped. Other conditions can happen within that related to this food service business that makes them slippery. And part of its mode of operation, it, in its manual, says you've got to make pretty severe efforts to clean that up. And the whole thing is mode of operation. I think that's incorrect, Your Honor. And I would suggest you look at Moyle again. But maybe you can just be more precise in what language from Moyle, in your view, supports that statement? Well, I think I don't have Moyle up here. But if you look at the Moyle decision, what the Court says is, look, no one is of course people invite people to come into their bar and then allow them to leave. And the lack of security was the parking lot. But what the Court says is that no one entices people to come into their restaurant or into the bar by the lack of security. For the same reason, no one entices someone to come into the McDonald's restaurant by the lack of proper cleaning methods. You have to look at the, and that's what Gump is saying. Oh, gee. Well, it's the opposite. They entice you to come in because it's clean. Well, they, but the mode of operation is not. And the mode of operation is you say, look, I don't go to that place because it's not clean. And that one I go to because it is clean and it isn't a sticky floor and a big mess. And you could say the same thing about the bar in Moyle, that they, people come in there because they think it's a safe place to get a drink. I don't think that was an argument made. Yes. Well, but the argument is what is the mode of operation and what's not the mode of operation. And the Supreme Court is very clear that the mode of operation in Walmart was not that Walmart kept its aisles clean, but that it was inviting people to come in, eat at the McDonald's, and allow them to carry their food around while they shopped. And not clean it up. No. That is not what the Court says the mode of operation is. And I think the Court in the Supreme Court is quite explicit. The mode of operation goes to notice. I'm sorry? The mode of operation goes to the requirement of notice. What the company does in response is a separate inquiry. So what the cleaning method is goes to the reasonableness of their actions in addressing whatever risks are created that once you're under the mode of operation or in general negligence liability. Well, our questions have taken you way over your time, and we have more cases to hear. I appreciate it. And especially we have Judge McKeown has an afternoon calendar as well. We'll take a 10-minute recess. Thank you for your arguments. I wish we could have spent more time on it, but here it goes. All rise.
judges: Thomas, McKeown, Fletcher